UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA
Civil Division

| | | |
|---|---|---|
| DAOUD RASHEED | : | |
| | : | |
| **Plaintiff** | : | **Civil Action Number: 1:16cv00665-CKK** |
| | : | |
| v. | : | |
| | : | |
| THE DISTRICT OF COLUMBIA | : | |
| | : | |
| **Defendant** | : | |

===============================

## VERIFIED SECOND AMENDED COMPLAINT

Plaintiff, DAOUD RASHEED, by and through undersigned counsel, Billy L. Ponds, of The Ponds Law Firm, respectfully submits this Verified Second Amended Complaint against the District of Columbia. In support of this Complaint, the plaintiff alleges as follows:

### JURISDICTION

1.      This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §1331, which gives district courts' jurisdiction over all civil actions arising under the Constitution, laws, and treaties of the United States.

2.      This Court also has subject matter jurisdiction pursuant to 28 U.S.C. §1343, which gives District Courts jurisdiction over (a) any civil action authorized by law to be brought by any person to redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right privilege or immunity secured by the Constitution of the United States or by any act of Congress providing for equal rights of citizens' of all persons within the jurisdiction of the United States; and (b) any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of the civil rights.

3.      Plaintiff brings this action to redress violations of his rights under the Civil Rights Act of 1964 (Title VII, 42 U.S.C. §2000(e)), *et. seq.* and the District of Columbia Human Rights Act (D.C. Code § 2-1402.11).

4.      Plaintiff filed a *pro se* EEOC Charge of Discrimination #570201600559 on December 31, 2015, alleging ongoing religious discrimination and a retaliatory termination of his employment. Plaintiff was issued a Right to Sue letter for this Charge on January 08, 2016.

5.      Plaintiff filed their original Complaint on or about April 08, 2016, within ninety (90) days of his receipt of the EEOC Right to Sue letter.

6.      Plaintiff is filing this Second Amended Complaint pursuant to Federal Rule of Civil Procedure 15 and asserts that any and all amendments relate back to the date of the original pleading.

7.      All of the acts complained of herein occurred in the District of Columbia.

## PARTIES

8.      Plaintiff Daoud Rasheed is a fifty-eight (58) year old African-American male who has served as a custodian in three (3) separate schools within the District of Columbia Public School system from December 8, 2009 until August 7, 2015.

9.      The District of Columbia is a municipality with the authority to sue and be sued and among other things, is responsible for the operation of the District of Columbia Public Schools ("DCPS") as an agency of the local government.

## FACTS

10.     On December 8, 2009, plaintiff was hired as a custodian grade 05 Step 1021, 40 P.H. at DCPS to serve at the Wheatley Educational Campus ("Wheatley") facility.

11.     Plaintiff served at Wheatley until September 23, 2011, when he accepted a transfer to a custodian position at Ballou High School ("Ballou").

12.     Plaintiff served at Ballou High School until July 30, 2014, when he was transferred to Simon Elementary School ("Simon").

13.     At all relevant times, plaintiff was a practicing Muslim, who adhered to traditional Muslim attire including maintaining a beard, wearing a kulfi, and wearing his pants above his ankles.

14.     During the plaintiff's tenure at Wheatley, he was actively involved in the DCPS community as a mentor in the One-to-One Mentoring Program. Plaintiff received a letter from Barbara Murphy, coordinator of the Mentoring Program, stating that plaintiff went above and beyond what was asked of mentors, and expressed her wishes that all of the mentors take the role as seriously and with such commitment as plaintiff.

15.     Plaintiff excelled in his work during his tenure at Wheatley, receiving consistently positive performance evaluations, known as IMPACT assessments. Plaintiff also received a letter from Mrs. Miller, a first grade teacher at Wheatley, thanking him for keeping her room in pristine condition.

16.     On September 23, 2011, plaintiff met with Mr. Branch, Principal of Ballou, Mr. Bonds, Foreman of Ballou, Ms. Jones, Building Supervisor of Ballou, and Mr. Branch's secretary, to discuss an opportunity to work as a custodian at Ballou.

17.     Approximately three (3) months prior to the aforementioned meeting, plaintiff had been volunteering at Ballou in the morning, in an attempt to gain notice and put himself in a position to acquire a supervisory position at that school. In light of plaintiff's efforts, Mr. Bonds recommended plaintiff for a custodian position at Ballou.

3

18.     In the aforementioned meeting, Mr. Branch and Mr. Bonds stated that a custodian position was available at Ballou, and that the position would be the same pay grade as his custodian position at Wheatley, as the position required opening and closing, which was only allowed at the custodian grade 05 step 1021,40 P.H. Plaintiff was told to go down to the DCPS Office of Human Resources to fill out the requisite paperwork.

19.     When plaintiff arrived at the Office of Human Resources, Margaret Oliver ("Oliver"), a Human Resources employee, provided plaintiff with a reassignment notice to the position of RW-3, Step 10 Custodian at Ballou.

20.     Oliver expressed disbelief that plaintiff was getting a downgrade in his pay rate, and attempted to contact Mr. Branch, but was unable to reach him due to him being away on vacation. Plaintiff accepted the Ballou position and signed the contract, based upon his prior oral agreement with Mr. Branch and Mr. Bonds that he would remain grade 05 step 10.

21.     Despite plaintiff's oral agreement with Mr. Branch and Mr. Bonds, the DCPS never corrected the pay rate, and subsequently plaintiff's hourly salary rate decreased from $21.41 to $18.72 as a result of the reassignment.

22.     During the time period when plaintiff was a custodian at Ballou, there were approximately twelve (12) custodians, with plaintiff being the only practicing Muslim.

23.     Approximately three (3) days after working at Ballou, plaintiff requested leave from his supervisor, Mr. Barnes, to allow him to be absent for approximately an hour on Friday to follow his religious traditions of afternoon prayer, from around noon until 1:00 p.m.

24.     When plaintiff made the aforementioned request to Mr. Barnes, he responded by yelling at plaintiff that he needed to "go back to the place where you came from".

4

25.     Plaintiff was taken aback by the hostility towards his simple leave request. As a practicing Muslim, plaintiff needed to attend prayer sessions each Friday. Plaintiff was not seeking an additional hour's leave, only permission to take his lunch hour from that time period so that he could attend prayer.

26.     Plaintiff was able to use his lunch hour every Friday while working as a custodian at Wheatley without issue. Plaintiff would adjust his schedule if issues such as traffic arose, by either staying late or coming early to make up for the occasional ten (10) to fifteen (15) minutes he would be late returning from his Friday prayer session.

27.     Plaintiff spoke with the Human Resources Office, and his former supervisor at Wheatley, but was informed that he could not return to his position as custodian there, due to the employment contract requiring him to wait at least one (1) year.

28.     Plaintiff returned to Ballou to inform Mr. Barnes that he was unable to return to his position at Wheatley. Mr. Barnes turned to Ms. Barnes and implied that they would use the IMPACT scores to remove plaintiff.

29.     Shortly after plaintiff had the aforementioned issue with Mr. Barnes regarding Friday prayers, his schedule was changed by another supervisor, Ms. Barnes, from the morning shift, which consisted of a schedule of 7:00 a.m. until 3:00 p.m., to the afternoon shift, which consisted of a schedule of 11:00 a.m. until 8:00 p.m.

30.     Plaintiff was taking a course entitled "NOW Heating and Air-Conditioning Service Inc." as a pre-requisite to his goal of becoming a boiler engineer. Due to his schedule change, plaintiff was no longer able to pursue this course, as the program was from 5:00 p.m. until 9:00 p.m.

31.     Plaintiff filed a grievance with the union regarding both his pay downgrade and the schedule change. Additionally, plaintiff spoke with Mr. Branch about the schedule change. Mr. Branch informed plaintiff that the schedule change was necessary to accommodate plaintiff's religion, despite the fact that the schedule change in no way accommodated plaintiff's religious needs.

32.     Upon information and belief, Ballou subsequently provided accommodations to other custodians who were seeking to complete programs similar to the "NOW" courses plaintiff was taking.

33.     While plaintiff was a custodian at Ballou, Ms. Barnes acted in a manner that continuously humiliated plaintiff due to plaintiff being a practicing Muslim. This included vocal criticism of plaintiff's adherence to the traditional Muslim appearance, including but not limited to, plaintiff's beard and pants.

34.     Ms. Barnes also assigned plaintiff a disproportionately large workload compared to other custodians, and assigned him to work in areas such as the basement, which had low-lighting and required plaintiff to work alone, in violation of his employment contract.

35.     Ms. Barnes assigned plaintiff tasks such as cleaning the entire football field, the entire parking lot and the entire boys and girls locker rooms. Plaintiff was also assigned two floors of the school, while other custodians were only assigned one floor.

36.     In an attempt to remedy his disproportionately large workload, plaintiff requested a "walk through", which involved Mr. Branch and a union representative walking through the daily assignments of plaintiff. As a result of this walk through, the union informed Mr. Branch that plaintiff's workload was in excess of what an individual should have been assigned. Mr. Branch failed to take any action to remedy this situation.

6

37.     Shortly after arriving at Ballou, plaintiff began to receive lower scores in his IMPACT assessment evaluations, which were completed by Mr. and Ms. Barnes. In an attempt to remedy the situation, plaintiff filed numerous grievance reports with the Office of Human Resources. However, a meeting was rarely held to discuss the grievances, and plaintiff was never provided with any solutions to remedy the situation.

38.     Shortly after arriving at Ballou, Plaintiff also began to get "write-ups" for numerous alleged workplace infractions. However, plaintiff routinely answered the allegations with a letter rebutting any allegation that he had violated the rules of his workplace.

39.     In February 2012, plaintiff was elected by his peers to serve as union "Shop Steward" of Ballou. After serving as Shop Steward for several weeks, Mr. and Ms. Barnes filed a complaint with the union alleging that plaintiff's performance was unsatisfactory, and they conspired to remove and replace him.

40.     Shortly after the aforementioned complaint was filed, another election was held and a younger, less experienced employee, Malcom Harris, was elected as Shop Steward.

41.     Subsequent to plaintiff being removed from the Shop Steward position, plaintiff requested a meeting with Mr. Ratliff, Teamster Local Union 639, to discuss the incident and his options for appeal.

42.     On February 9, 2012, plaintiff requested a leave of absence to perform the Muslim annual pilgrimage to Makkah, known as Hajj. Plaintiff requested leave at a time when it would be least burdensome on the school and arranged coverage for his duties with the union in order to ensure there would be no additional hardship on Ballou.

43.     Plaintiff's aforementioned leave request for Hajj was denied by Mr. Branch, which resulted in the plaintiff losing approximately five thousand four hundred ($5400.00) dollars due to the no refund policy for the Hajj package he had purchased.

44.     On October 3, 2012, upon information and belief, Mr. Branch allegedly placed an anonymous call to the FBI stating that wires, a clock and flammable liquid were allegedly seen in the car plaintiff was driving. Upon information and belief, this call was made solely based upon the fact that plaintiff was a known practicing Muslim.

45.     As a result of the aforementioned call, the FBI, Terrorist Track Team and the MPD went to Ballou in the evening while plaintiff was at work, and lured plaintiff outside of the school under false pretenses.

46.     Plaintiff consented to a search of his vehicle, which ended without incident due to the fact that none of the materials listed in the call were found, nor were any dangerous or illegal materials.

47.     On October 10, 2012, Mr. Branch made false statements about plaintiff, which included that plaintiff would hold Mr. Barnes and other workers hostage, due to the fact that plaintiff had bought a ticket to Saudi Arabia for Hajj. Upon information and belief, these statements were made based solely upon the fact that plaintiff was a practicing Muslim.

48.     On November 13, 2012, plaintiff filed a charge of discrimination, #570-2013-00289, with the EEOC, alleging religious discrimination starting in September 2011. Plaintiff received a right to sue letter on February 23, 2015.

49.     On December 17, 2012, Ms. Barnes submitted a formal write-up of plaintiff for his alleged failure to answer his two-way radio. Prior to the write-up, plaintiff had reported that his

8

radio was broken and in need of repair or replacement. Plaintiff's supervisors did not address the issue of his broken radio, but still decided to write him up for his failure to have a working radio.

50.     On January 10, 2013, Ms. Barnes approached plaintiff as he was cleaning the trunk of his car in the Ballou parking lot, and accused him of stealing extension cords and other school property. Ms. Barnes pushed plaintiff out of the way with her hip, and proceeded to search plaintiff's vehicle without his consent.

51.     Plaintiff reported the January 10, 2013 incident to Ms. Straighter, Assistant Principal of Ballou High School. Plaintiff also contacted a union representative about the incident, who advised plaintiff to contact the MPD, which plaintiff did.

52.     On multiple occasions, Ms. Barnes failed to ensure that plaintiff had all of the proper equipment available to him in order for him to be able to complete all of his work duties. On January 11, 2013, plaintiff was unable to properly clean the classrooms he was assigned due to him not having access to a working vacuum.

53.     On multiple occasions, plaintiff was told that he needed to take his mop and rags, which he used to clean areas such as the bathroom and locker rooms, home and then was told to clean them there. These mops and rags had bodily fluids, and it was both unsafe and unsanitary for plaintiff to transport them home and then clean them there.

54.     On March 14, 2013, around 3:30 p.m., plaintiff was called into a meeting with Mr. Barnes, Ms. Barnes, Malcom Harris (Shop Steward), Detective Hollins, and Officer Buckner. During the meeting, the parties discussed plaintiff's allegations that Mr. Barnes owed him thirty ($30.00) dollars for some miscellaneous items plaintiff had purchased as a personal favor for Mr. Barnes.

55.     In the March 14, 2013 meeting, Mr. Barnes denied ever receiving the items from plaintiff. The meeting concluded without any incidents, other than an MPD officer getting two inches from plaintiff's face, and then telling plaintiff that he would not take this incident to court.

56.     On March 14, 2013, subsequent to the aforementioned meeting, plaintiff met with Daniel Shea, Instructional Superintendent. Plaintiff was placed on administrative leave until July 30, 2014.

57.     On July 30, 2014, plaintiff's administrative leave was lifted, and he was transferred to serve as a custodian at Simon Elementary School ("Simon").

58.     During 2015, Principal Holmes of Simon Elementary School constantly tried to discourage plaintiff from participating in his weekly Friday afternoon prayer sessions.

59.     In 2015, plaintiff was denied a leave of absence, which he had previously requested in order to attend the funeral service of his ex-wife, with whom he had fathered five (5) children. On June 5, 2015, despite plaintiff's FMLA request for three (3) days of grievance leave, Principal Holmes requested plaintiff to report to work.

60.     From August 22, 2012, until July 25, 2015, plaintiff filed 47 unanswered Grievance Reports with his supervisors at Ballou and Simon.

61.     On December 31, 2015, plaintiff filed a charge of discrimination, #570-2016-0559, with the EEOC, alleging religious discrimination and retaliation. Plaintiff was issued a right to sue letter on January 08, 2016.

62.     On August 7, 2015, plaintiff received a final notice of termination for his employment at DCPS.

## FIRST CLAIM FOR RELIEF

10

## DISPARATE TREATMENT RELIGIOUS DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 AND THE DISTRICT OF COLUMBIA HUMAN RIGHTS ACT (DCHRA), DC CODE § 2-1402.11

63.     The plaintiff incorporates by reference paragraphs 1 through 81 as if fully set forth herein.

64.     Defendant District of Columbia, through its agents or supervisors, unlawfully discriminated against Rasheed on the basis of his religion and denied him equal employment benefits including his pay, work assignments, schedule, and leave time.

65.     Defendant District of Columbia, through its agents or supervisors, unlawfully discriminated against Rasheed on the basis of his religion and denied him the equal employment opportunity to fair and unbiased IMPACT Assessment performance evaluations.

66.     Defendant District of Columbia, through its agents or supervisors, unlawfully decreased plaintiff's pay grade when they transferred him from Wheatley to Ballou. Defendant District of Columbia's agents, Mr. Bonds and Mr. Branch, misrepresented the position to plaintiff, and coerced plaintiff into accepting a lower paying position than he had at Wheatley.

67.     Upon information and belief, defendant District of Columbia, through its agents or supervisors, promoted or transferred other custodians, providing them a raise in their pay grade, and were open and transparent about the compensation for these promotions and transfers.

68.     Defendant District of Columbia's actions in coercing plaintiff into a lower paying position, based on a misrepresentation of that position's compensation, gives rise to the inference of religious discrimination.

69.     Defendant District of Columbia, through its agents or supervisors, unlawfully assigned plaintiff disproportionately large work assignments. These assignments were objectively

11

found to be too burdensome for one individual by a union representative, and were disproportionate compared to the work assignments of other, non-Muslim custodians.

70.     Defendant District of Columbia's actions assigning plaintiff disproportionately large and overly burdensome work assignments led to the adverse employment action of plaintiff receiving lower IMPACT assessment scores. Given that similarly situated custodians were not given such a large workload, this gives rise to an inference of religious discrimination.

71.     Defendant District of Columbia, through its agents or supervisors, unlawfully denied plaintiff the opportunity to have a schedule that would accommodate his educational aspirations. Upon information and belief, defendant allowed other similarly situated custodians to adjust their schedules to accommodate similar educational programs. The fact that plaintiff was told that his schedule change was made to accommodate his Friday prayers, despite the fact that it in no way furthered this end, and the fact that similarly situated custodians were given the employment benefit of a schedule that allowed them to participate in their educational program of choice, gives rise to the inference of religious discrimination.

72.     Defendant District of Columbia, through its agents or supervisors, unlawfully denied plaintiff the equal opportunity for requested leave. Plaintiff requested leave for Hajj in 2012, and despite the fact that defendant had sufficient coverage for plaintiff's duties, they denied his request for leave to make a religious pilgrimage. Additionally, plaintiff was denied three (3) days of bereavement leave when his ex-wife died. These denials of requested leave give rise to the inference of religious discrimination.

73.     Plaintiff, as a practicing Muslim, suffered adverse employment actions that give rise to the inference of religious discrimination.

12

## SECOND CLAIM FOR RELIEF
## HOSTILE WORK ENVIRONMENT IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 AND THE DISTRICT OF COLUMBIA HUMAN RIGHTS ACT (DCHRA), DC CODE § 2-1402.11

74.     The plaintiff incorporates paragraphs 1 through 81 as if fully set forth herein.

75.     Defendant District of Columbia, through its agents or supervisors, unlawfully discriminated against Rasheed on the basis of his religion by creating a hostile work environment through numerous acts that discouraged and impeded plaintiff from being able to practice the religion of his choice.

76.     Plaintiff's supervisors at Ballou made it a pattern and practice to harass and discriminate against plaintiff on the basis of his religion, through their aforementioned actions and statements.

77.     At numerous times during plaintiff's tenure at Ballou, Mr. Branch took the aforementioned actions and made the aforementioned statements, on the basis of plaintiff's religion, which were insulting and humiliating for the plaintiff.

78.     During plaintiff's tenure at Simon, Principal Holmes and other individuals attempted to discourage plaintiff from participating in the activities that were consistent with being a practicing Muslim.

79.     The frequency and duration of this harassment and discrimination, persisting from 2011 until 2015, demonstrates that the harassment and discrimination related to plaintiff's religion was pervasive.

80.     The religious discrimination and harassment substantially altered the terms of plaintiff's employment, including but not limited to his working conditions, work assignments, work schedule, performance evaluations, and leave requests, ultimately leading to plaintiff's termination, demonstrates that this discrimination and harassment was severe.

13

81.     Defendants subjected plaintiff to a hostile work environment due to the fact that plaintiff was a practicing Muslim.

## **PRAYER FOR RELIEF**

WHEREFORE, plaintiff Daoud Rasheed demands judgment against all defendants as follows:

I.   Re-pleads and re-alleges paragraphs 1 through 81 with the same force and effect as if fully set forth herein;

II.  Subject to further discovery, reserve the right to amend the complaint;

III. An award of compensatory and punitive damages in the amount of $2,500,000.00 in favor of Daoud Rasheed for the Title VII violations;

IV. An award in the amount of $2,500,000.00 in favor of Daoud Rasheed for the District of Columbia Human Rights Act violations and punitive damages in the amount of $1,000,000.00;

V.   Attorney's Fees, costs and prejudgment interest;

VI. And any other relief this Court deems just and fair;

_____
Daoud Rasheed

Daoud Rasheed
By Counsel

14

Respectfully submitted,

/s/ Billy L. Ponds
Billy L. Ponds
The Ponds Law Firm
Bar Number 379883
2101 L Street, NW
Suite 400
Washington, D.C. 20037
Tel Number: 202-333-2922
Email: plfpc@aol.com

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the Plaintiff's Second Amended Complaint was sent via Case File Express to counsel for Defendant District of Columbia, Tram T. Pham, Assistant Attorney General for the District of Columbia, on this 12th day of August 2016.

/s/ Billy L. Ponds
Billy L. Ponds

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**
**Civil Division**

| | | |
|---|---|---|
| **DAOUD RASHEED** | : | |
| | : | |
| **Plaintiff** | : | **Civil Action Number: 1:16cv00665-CKK** |
| | : | |
| **v.** | : | |
| | : | |
| **THE DISTRICT OF COLUMBIA** | : | |
| | : | |
| **Defendant** | : | |

===============================

## JURY DEMAND

The plaintiff hereby requests a jury trial on all triable issues, including the amount of

damages to be awarded.

Daoud Rasheed
By Counsel

Respectfully submitted,

/s/ Billy L. Ponds
Billy L. Ponds
The Ponds Law Firm
Bar Number 379883
2101 L Street, NW
Suite 400
Washington, D.C. 20037
Tel Number: 202-333-2922
Email: plfpc@aol.com

16