# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

DAOUD RASHEED,

     Plaintiff

     v.

DISTRICT OF COLUMBIA,

     Defendant

Civil Action No. 16-665 (CKK)

## MEMORANDUM OPINION
(November 30, 2020)

This is a religious discrimination case brought by a former employee of the District of Columbia Public Schools ("DCPS"). Plaintiff Daoud Rasheed alleges that he was denied leave to attend his ex-wife's funeral and grieve her death in June 2015, and he was wrongfully terminated, in August 2015.[1] Plaintiff brings this lawsuit against the District of Columbia under Title VII of the Civil Rights Act ("Title VII") and the District of Columbia Human Rights Act ("DCHRA").

Before the Court is Defendant District of Columbia's [84] Motion for Summary Judgment. Defendant District of Columbia ("Defendant" or "the District") claims entitlement to summary judgment on Plaintiff's discrimination claim relating to his termination because the District alleges that it terminated Plaintiff's employment for a legitimate non-discriminatory reason. Furthermore, Defendant asserts that Plaintiff's evidence does not show that the District's explanation for its employment decision is pretext for religious discrimination. With regard to Plaintiff's discrimination claim relating to denial of leave, Defendant claims entitlement to summary judgment on grounds that Plaintiff has failed to establish a prima facie case of religious

---

[1] In his Second Amended Complaint, Plaintiff Rasheed alleges denial of "fair and unbiased performance evaluations" and "equal employment benefits including his pay, work assignments, schedule and leave time." Plaintiff's Opposition, ECF No. 85, at 1. As explained herein, only Plaintiff's allegations concerning denial of leave in June 2015 and termination of employment in August 2015 are before this Court.

discrimination or to even create a material factual dispute about the alleged denial of leave. Plaintiff alleges that he has demonstrated the existence of issues of material fact regarding whether he suffered discrimination, and further, that the District's asserted reason for his termination is pre-textual.

Upon consideration of the pleadings,[2] the relevant legal authorities, and the record as a whole, the Court GRANTS Defendant's motion. As to Plaintiff's claim involving his termination, the Court concludes that the District has proffered a legitimate non-discriminatory reason for the termination decision, and Plaintiff has produced no other evidence showing Defendant's proffered, non-discriminatory reasons for its action to be pretextural. Next, considering Plaintiff's claim that he was denied leave on the basis of religious discrimination, the Court concludes that Plaintiff has proffered no evidence connecting Defendant's actions surrounding the leave decision to any religious discrimination.

Before analyzing the substance of the pleadings filed by the parties, the Court notes that Defendant District of Columbia ("Defendant" or "the District") asserts that Plaintiff failed to follow Local Rule 7(h)(1), which provides in part that:

> Each motion for summary judgment shall be accompanied by a statement of material facts as to which the moving party contends there is no genuine issue, which shall include references to the parts of the record relied on to support the statement. An opposition to such a motion shall be accompanied by a separate concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated, which shall include references to the parts of the record relied on to support the statement.

---

[2] The Court's consideration has focused on the following documents and their attachments and/or exhibits: Def. District of Columbia's Motion for Summary Judgment, ECF No. 84 ("Def.'s Mot."); Plaintiff's Opposition to Defendant's Motion for Summary Judgment, ECF No. 85 ("Pl.'s Opp'n"); Reply to Plaintiff's Opposition to the District of Columbia's Motion for Summary Judgment, ECF No. 86 ("Def.'s Reply").

In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. *See* LCvR 7(f).

LCvR 7(h)(1).

In this case, Plaintiff's response to Defendant's Statement of Material Facts Not in Genuine Dispute is not set forth in a separate document; instead, it is found within Plaintiff's Opposition, although it is clearly designated as such, and it contains references to the record. For purposes of judicial efficiency and economy, the Court shall consider Plaintiff's response to Defendant's Statement of Material Facts. Prior to beginning its analysis, this Court notes that Defendant's Material Facts Not in Dispute are not controverted by Plaintiff, although Plaintiff does proffer additional factual information regarding some of Defendant's Material Facts Not in Genuine Dispute. Some of this additional information is noted as background in the section below, while other information has been purposefully omitted. None of the additional factual information proffered by Plaintiff controverts the Defendant's Statement of Material Facts Not in Genuine Dispute by raising a genuine issue of material fact.

## I. BACKGROUND

Plaintiff Daoud Rasheed ("Plaintiff" or "Mr. Rasheed") began his employment [as a custodian] at Abram Simon Elementary School ("Simon") in July of 2014. Defendant's Statement of Material Facts Not in Genuine Dispute, ECF No. 84-1 ("Def.'s Stmt."), at ¶ 1. Plaintiff previously held a custodian position at Ballou High School ("Ballou") until July 30, 2014, when he was transferred to Simon. Plaintiff's Response to Defendant's Statement of Material Facts Not in Genuine Dispute ("Pl.'s Resp."), at ¶ 1.[3]

---

[3] Prior to working at Ballou, Plaintiff worked as a custodian at Wheatley Educational Campus ("Wheatley") beginning in December 2009, until September 23, 2011, when he transferred to Ballou. Second Am. Compl., ECF No. 15, at ¶¶ 10-11.

Custodians are evaluated twice each school year using the District of Columbia Public School's (DCPS's) IMPACT Assessment System.  Def.'s Stmt., at ¶ 5.  In January of 2015, Simon's principal, Kim Spence, evaluated Mr. Rasheed's overall performance as ineffective. Def.'s Stmt., at ¶¶ 6-7.  In May of 2015, Simon's acting principal, Dr. Sharon Holmes, also rated Mr. Rasheed's overall performance as ineffective.  Def.'s Stmt., at ¶¶ 8-9.

Defendant's Statement at ¶ 10 indicates that "employees who rate minimally effective in both cycles are terminated."  The Court notes that, in this Statement, Defendant appears to use the terms minimally effective and ineffective interchangeably, while there is a distinction made in the Custodial IMPACT Assessment Instructions.  As previously indicated, Mr. Rasheed received two "ineffective" ratings.  The language of the Impact Assessment cited in support of Defendant's Statement at ¶ 10 indicates that, with regard to an "Ineffective" rating, individuals receiving this rating "will be subject to separation from the school system."  With regard to a "Minimally Effective" rating, it is stated that: "If, after two years of support, an [employee] is unable to move beyond the Minimally Effective level, she or he will be subject to separation."  *See* Custodial IMPACT Assessment Instructions 2014-2015, Def.'s Ex. E, at 28.

Plaintiff acknowledges that employees "who rate minimally" may be but are not required to be terminated.[4]  Pl.'s Resp., at ¶ 9; citing Donielle Powe Deposition, ECF No. 85-2, at 5 (referencing page 169) ("If [an employee's] performance is not meeting expectations and specifically for impact, if it is ineffective, they could be separated through that way.").[5]  This Court notes that Plaintiff's Response ¶ 9 to Defendant's Statement ¶ 10 does not create a genuine issue

---

[4] Plaintiff also appears to fail to distinguish between minimally effective and ineffective.

[5] Mr. Powe was the District's Rule 30(b)(6) witness.

of material fact, as there is agreement that a negative performance evaluation may result in termination.

Plaintiff claims that, in June 2015, he was denied three days of leave to attend his ex-wife's June 3, 2015 funeral and grieve her death. Def.'s Stmt., at ¶2.  On June 8, 2015, Plaintiff submitted a leave slip for sick leave taken from June 1, 2015 through June 5, 2015.  Def.'s Stmt., at ¶ 4.

Plaintiff was rated ineffective by two principals, and terminated, effective August 7, 2015, based upon his performance ratings. Def.'s Stmt., at ¶ 11.[6]  On December 31, 2015, Plaintiff filed a EEOC Charge of Discrimination.  Def.'s Stmt., at ¶ 13.  In that December 31, 2015 Charge of Discrimination, Plaintiff did not reference any claim of religious discrimination relating to being denied a request for three days leave to attend his ex-wife's funeral in June 2015 and to grieve her death. Def.'s Stmt., at ¶ 14.  Plaintiff's Charge did reference his termination, Def.'s Mot., Ex. H (EEOC Charge of Discrimination), ECF No. 84-9; it noted that he had filed a prior EEOC charge of discrimination on or about November 2012, which was open until on or about February 2015 (and which therefore pre-dates his June 2015 request for leave).  Pl.'s Resp., at ¶ 13; *see also* Def.'s Stmt., at ¶ 12 ("Rasheed filed an EEOC Charge on November 13, 2012, for discrimination beginning in September 2011.").

Plaintiff received a right to sue letter with a date of January 8, 2016 from the EEOC, and he filed this lawsuit on April 8, 2016.  On August 15, 2016, Plaintiff filed his Second Amended Complaint, in which he asserted two counts of discrimination under Title VII and the DCHRA for:

---

[6] Again, Defendant appears to use these terms minimally effective and ineffective interchangeably.  Defendant states that Plaintiff was terminated "because of his minimally effective rating," after indicating that Plaintiff was rated ineffective by two principals.  Def.'s Stmt.  at ¶ 11.  The references cited by Defendant in support of this Statement, at ¶ 11, discuss Plaintiff's "ineffective" ratings, and they are consistent with the rating documentation, which was also submitted as an exhibit.

(1) disparate treatment (Count I); and (2) hostile work environment (Count II).  During the course of discovery, the District moved for judgment on the pleadings, arguing that Plaintiff failed to exhaust his administrative remedies for his Title VII claims.  In resolving Defendant's motion for judgment on the pleadings, the Court took judicial notice of Plaintiff's December 31, 2015 Charge of Discrimination and found that the Charge was sufficient to exhaust Plaintiff's administrative remedies on his religious discrimination claim, but not on his claim for hostile work environment.  *See* Memorandum Opinion and Order, ECF Nos. 72, 71.  This Court declined further to take supplemental jurisdiction over the hostile work environment claim under the DCHRA, with the effect that the Court dismissed Count II of the Plaintiff's Second Amended Complaint.  Defendant now seeks summary judgment on Count I of Plaintiff's Second Amended Complaint.

## II.  LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The mere existence of some factual dispute is insufficient on its own to bar summary judgment; the dispute must pertain to a "material" fact.  *Id.*  Accordingly, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Nor may summary judgment be avoided based on just any disagreement as to the relevant facts; the dispute must be "genuine," meaning that there must be sufficient admissible evidence for a reasonable trier of fact to find for the non-movant.  *Id.*

In order to establish that a fact is or cannot be genuinely disputed, a party must (a) cite to specific parts of the record—including deposition testimony, documentary evidence, affidavits or declarations, or other competent evidence—in support of its position, or (b) demonstrate that the

materials relied upon by the opposing party do not actually establish the absence or presence of a genuine dispute.  Fed. R. Civ. P. 56(c)(1).  Conclusory assertions offered without any factual basis in the record cannot create a genuine dispute sufficient to survive summary judgment.  *See Association of Flight Attendants-CWA, AFL-CIO v. Dep't of Transp.*, 564 F.3d 462, 465-66 (D.C. Cir. 2009).  Moreover, where "a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the district court may "consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e).

When faced with a motion for summary judgment, the district court may not make credibility determinations or weigh the evidence; instead, the evidence must be analyzed in the light most favorable to the non-movant, with all justifiable inferences drawn in her favor.  *Liberty Lobby*, 477 U.S. at 255.  If material facts are genuinely in dispute, or undisputed facts are susceptible to divergent yet justifiable inferences, summary judgment is inappropriate.  *Moore v. Hartman*, 571 F.3d 62, 66 (D.C. Cir. 2009).  In the end, the district court's task is to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 251- 52.  In this regard, the non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50 (internal citations omitted).

In recognition of the difficulty in uncovering clear evidence of discriminatory or retaliatory intent, the district court should approach summary judgment in an action for employment discrimination or retaliation with "special caution." *Aka v. Wash. Hosp. Ctr.*, 116 F.3d 876, 879-

80 (D.C. Cir. 1997), *vacated on other grounds*, 124 F.3d 1302 (D.C. Cir. 1997) (*en banc*). However, the plaintiff is not relieved of his burden to support his allegations with competent evidence. *Brown v. Mills*, 674 F. Supp. 2d 182, 188 (D.D.C. 2009).  As in any context, where the plaintiff would bear the burden of proof on a dispositive issue at trial, at the summary judgment stage he bears the burden of production to designate specific facts showing that there exists a genuine dispute requiring trial.  *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009).  Otherwise, the plaintiff could effectively defeat the "central purpose" of the summary judgment device—namely, "to weed out those cases insufficiently meritorious to warrant . . .  trial"—simply by way of offering conclusory allegations, speculation, and argument.  *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999).

### III.  DISCUSSION

Defendant has moved for summary judgment on Plaintiff's religious discrimination claims; *i.e.*, those specifically based on his alleged denial of leave in June 2015 to attend his ex-wife's funeral and grieve her death and his August 2015 termination.  First, Defendant contends that Mr. Rasheed "only exhausted his administrative remedies under Title VII for the termination claim." Def.'s Mot., ECF No. 84, at 3.  Second, Defendant argues that the District "had a legitimate and nondiscriminatory reason for [Plaintiff's] termination" based on his performance assessment.  *Id.* at 4.  Third, Defendant asserts that "[Mr.] Rasheed's termination and his claim that he was denied leave in June 2015 are his only timely claims under the DCHRA."  *Id.* at 3.  Fourth, Defendant argues that Plaintiff has not established a *prima facie* case of religious discrimination regarding his denial of leave claim. *Id.* at 4.  The Court will address each argument in turn.

**A.  Plaintiff's Claim under Title VII**

**1. Exhaustion of Administrative Remedies**

Title VII requires that a plaintiff exhaust his administrative remedies before filing a lawsuit. *See Park v. Howard University*, 71 F.3d 904, 907 (D.C. Cir. 1995), *cert. den.*, 519 U.S. 811 (1996); *Raines v. U.S. Dept. of Justice*, 424 F. Supp. 2d 60, 65 (D.D.C. 2006). "Before filing a lawsuit under the ADA, Title VII, or ADEA, a plaintiff must exhaust her administrative remedies  by filing a charge of discrimination with the EEOC." *Cooper v. Henderson*, 174 F. Supp. 3d 193, 202 (D.D.C. 2016) (citing 29 U.S.C. § 626(d)(1) and 42 U.S.C. § 2000e–5(e)(1)). While the exhaustion of administrative remedies "should not be construed to place a heavy technical burden" on the Title VII plaintiff, it is not "a mere technicality." *Park v. Howard Univ.*, 71 F.3d at 907 (internal quotation marks omitted). The exhaustion requirement serves the purposes of (1) providing an opportunity for the administrative investigation of the claimant's allegations; (2) affording the charged party prompt notice of those allegations; (3) promoting the informal resolution of claims; and (4) ensuring the preservation of evidence relating to the claimant's allegations. *Schuler v. PrincewaterhouseCoopers, LLP*, 514 F.3d 1365, 1376 (D.C. Cir. 2008); *Ndondji v. InterPark Inc.*, 768 F. Supp. 2d 263, 276 (D.D.C. 2011).

A plaintiff who files a timely administrative charge may proceed with a subsequent civil suit in federal court that is "limited in scope to claims that are like or reasonably related to the allegations of the charge and growing out of such allegations." *Park*, 71 F.3d at 907 (internal quotation marks and citations omitted). This standard "serves the important purpose[] of giving the charged party notice of the claim and narrow[ing] the issues for prompt adjudication and decision." *Latson v. Holder*, 82 F. Supp. 3d 377, 384 (D.D.C. 2015) (quoting *Park*, 71 F.3d at 907) (internal quotation marks omitted). "Because untimely exhaustion of administrative remedies

is an affirmative defense, the defendant bears the responsibility of pleading and proving it." *Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997) (citing *Brown v. Marsh*, 777 F.2d 8, 13 (D.C. Cir. 1985)).  In a Title VII case, "[i]t is appropriate to grant a defendant's motion for summary judgment when a plaintiff fails to demonstrate exhaustion of administrative remedies." *Greer v. O'Neill*, No. Civ. A. 01-1398, 2003 WL 25653036, at *2 (D.D.C. Sept. 25, 2003) (citing *Siegel v. Kreps*, 654 F.3d 773 (D.C. Cir. 1981)).

Plaintiff's Count One is for religious discrimination under Title VII and the DCHRA. Second Am. Compl., ECF No. 15, at ¶¶ 63-73.  Plaintiff enumerates six alleged adverse actions supporting his Title VII claim: (1) denial of equal employment opportunities for fair and unbiased performance evaluations (shortly after arriving at Ballou), at ¶¶  37, 65; (2) a decreased pay grade when he transferred from Wheatley to Ballou, and being coerced to accept this transfer/pay decrease, at ¶¶ 19-21, 31, 64, 66, 68; (3) disproportionately large work assignments (while Plaintiff was a custodian at Ballou), at ¶¶ 34-36, 64, 69; (4) being deprived of a schedule to accommodate his educational aspirations and Friday prayers, while working at Ballou, at ¶¶ 23, 26, 29, 30, 64, 71; (5) denial of equal opportunities for leave (for a pilgrimage to Hajj in February 2012 and to grieve his ex-wife's death in June 2015), at ¶¶ 42, 59, 64, 72; and (6) the termination of his employment in August 2015, at ¶ 62.

In its Motion for Summary Judgment, Defendant contends that – under Title VII – Plaintiff only exhausted his administrative remedies with regard to his claim relating to his termination. *See* Def.'s Mot., ECF No. 84,  at 7-8.  Mr. Rasheed acknowledges that plaintiffs must first exhaust their claims through the administrative process,  Pl.'s Opp'n, ECF No. 85, at 9, and he alleges generally that he has exhausted his administrative remedies.

### a. Statute of Limitations

When the EEOC has a cross filing agreement with a state or local agency, as in the District of Columbia, a plaintiff must file a charge of discrimination within 300 days of the alleged discriminatory action.  *See* 42 U.S.C. § 2000e-5(e)(1); *Tucker v. Howard Univ. Hosp.*, 764 F. Supp. 2d 1, 6 (D.D.C. 2011).   "A  discrete or retaliatory or discriminatory act 'occurred' on the day that it happened . . ., therefore [a party] must file a charge within . . . 300 days of the date of the act or lose the ability to recover for it."  *Natl. Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002).  Untimely discrete acts are not actionable, even if they relate to acts in a timely charge.  *Id.* at 113.   Then, "[a]fter an employee files a charge with EEOC and receives notice of final agency action, the employee must file suit within ninety (90) days."  *Oviedo v. Wash. Metropolitan Area Transit Auth.*, 948 F.3d 386, 394 (D.C. Cir. 2020) (citing § 2000(e)-5(f)(1)).   In this case, it is undisputed that Plaintiff's EEOC Charge is dated December 31, 2015, *see* EEOC Charge, ECF No. 84-9, and this Court has previously determined that this lawsuit was "timely filed within 90 days after the EEOC's right to sue notice."  *See* August 6, 2019 Memorandum Opinion, ECF No. 72, at 6.

Under these aforementioned limitations periods, the Court finds that any Title VII claim deriving from Plaintiff's first four alleged adverse actions, and the fifth alleged adverse action – as it pertains to the February 2012 denial of leave – is time-barred.  These alleged adverse actions occurred during Plaintiff's employment at Ballou, which was during the period September 2011 through July 2014, when the EEOC Charge was filed on December 31, 2015.  This leaves Plaintiff's denial of leave in June 2015 (noted in the fifth adverse action) and his August 2015 termination of employment as the only possible timely adverse actions under Title VII.  But, Mr. Rasheed's December 31, 2015 EEOC Charge asserted only two discrete claims: (1) that he was

unfairly evaluated sometime "on or about September 2012" (noted above as time-barred); and (2) his employment was terminated [on August 7, 2015] in retaliation for filing EEOC charges.  *See* EEOC Charge, ECF 84-9.  There is no mention of his alleged denial of three days leave in June 2015, which is a discrete action.

Mr. Rasheed's response to this argument about exhaustion of remedies consists of: (1)  a discussion of the time frames for filing suit in district court; (2) a citation to a case that has no bearing on this case; and (3) a misstatement of Defendant's argument.  Pl.'s Opp'n, ECF No. 85, at 8.  Plaintiff asserts that "it is not true that the description in the charge Rasheed filed with the EEOC makes no reference to religious discrimination," *id.* at 9-10, but that misconstrues what this Court has already found – Plaintiff's EEOC Charge gave rise to a claim for religious discrimination, but not for hostile work environment.  Memorandum Opinion, ECF No. 72, at 8-12.   Plaintiff contends that "the discriminatory acts charged are actionable in this lawsuit under the doctrine of continuing-violations[,]"  Pl.'s Opp'n, ECF No. 85, at 10, but this assertion relies on a hostile work environment claim.  *See Keohane v. United States*, 669 F. 3d 325, 329 (D.C. Cir. 2012)  ("[A] continuing violation is one that could not reasonably have been expected to be made the subject of a lawsuit when it first occurred because its character as a violation did not become clear until it was repeated during the limitations period, typically because it is only its cumulative impact (as in the case of a hostile work environment) that reveals its illegality.") (citation and internal quotation marks omitted).

The argument Defendant asserts is that the only <u>timely</u> claim for Title VII purposes is based upon Plaintiff's termination of employment, which is a discrete action.  *See Ahuja v. Detica, Inc.*, 742 F. Supp. 2d 96, 111 (D.C. 2010) (ruling that plaintiff only had claims based on discrete acts of discrimination once the Court had dismissed a hostile work environment claim, and

accordingly, plaintiff could not rely upon the continuing violation doctrine).  Plaintiff seems to acknowledge this principle regarding discrete claims, as he asserts that "employees [are not barred] from filing charges about related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed."  Pl's Opp'n, ECF No. 85, at 10-11.  "Each discrete discriminatory act starts a new clock for filing charges," and a plaintiff's failure to comply with applicable filing deadlines will cause claims to be time barred "even when they are related to acts alleged in timely filed charges." *National Passenger Railroad Corp. v. Morgan*, 536 U.S. 101, 113 (2002).  In the *National Passenger Railroad* case, the Supreme Court opined that where a plaintiff alleges a number of separate acts that together make a single hostile work environment claim, "the employer may be liable for all acts that are part of this single claim" so long as the employee files her charge "within 180 or 300 days of any act that is part of the hostile work environment."  *Id.* at 118.  But, as previously stated, in this case, there is no claim for hostile work environment, and accordingly, any claims relating to alleged adverse actions that occurred while Plaintiff worked at Ballou (September 2011 to July 2014) are untimely.

Furthermore,  Plaintiff did not reference the June 2015 alleged denial of leave (or make any allegations regarding denial of leave) in his EEOC Charge, and therefore, he cannot pursue that claim under Title VII.  If discriminatory acts alleged by a plaintiff in the complaint "are not articulated in the administrative charge, are not reasonably related to the allegations in the charge, and do not fall within the scope of any administrative investigation that can reasonably be expected to follow, [the plaintiff] may not proceed with these additional claims without first exhausting the administrative process." *Shipman v. Nat'l R.R. Passenger Corp. (AMTRAK)*, 241 F. Supp. 3d 114, 123 (D.D.C. 2017) (Kollar-Kotelly, J.), *aff'd sub nom. Shipman v. Nat'l R.R. Passenger Corp.*, No. 17-5066, 2017 WL 4217244 (D.C. Cir. Aug. 1, 2017).  Accordingly, having again examined

the December 31, 2015 EEOC Charge, in the context of the timing of the adverse actions alleged in Plaintiff's Second Amended Complaint, this Court concludes that Plaintiff has exhausted his administrative remedies under Title VII only with regard to his claim that his termination was based on religious discrimination.

### 2.  Legitimate, Nondiscriminatory Reason for the Termination

As a preliminary matter, Defendant notes that both Title VII and the DCHRA forbid employers from discriminating against employees on the basis of religion.  *See* 42 U.S.C. § 2000e-2(a)(1); D.C. Code §§ 2-1401.01-1403.17.   Under Title VII, "two essential elements of a discrimination claim are that (i) the plaintiff suffered an adverse employment action (ii) because of the plaintiff's race, color, religion, sex, national origin, age, or disability."   *Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008).   For a plaintiff to succeed on a claim for discrimination, he "must demonstrate that [religion] was a "motivating factor" for the termination" or another prohibited personnel action.  *DeJesus v. WP Co. LLC*, 841 F.3d 527, 532 (D.C. Cir. 2016).   A plaintiff bears the ultimate burden of persuading the trier of fact that intentional discrimination or retaliation occurred.  *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981).

At summary judgment, Title VII discrimination claims are assessed pursuant to the burden-shifting framework originally set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973); *see also MacFarland v. George Washington Univ.*, 935 A.2d 337, 346 (D.C. 2007) (applying *McDonell Douglas* to DCHRA claims).   "Under this formula, an employee must first make out a prima facie case of retaliation or discrimination."   *Morris v. McCarthy,* 825 F.3d 658, 668 (D.C. Cir. 2016) (citations omitted).   "The employer must then come forward with a legitimate, nondiscriminatory or nonretaliatory reason for the challenged action."

*Id.*  After the employer has proffered a nondiscriminatory reason, the *McDonnell Douglas* burden-shifting framework disappears, and the court is left to determine whether the plaintiff has put forth enough evidence to defeat the defendant's proffer and support a finding of discrimination.  *Brady v. Office of the Sergeant at Arms*, 520 F.3d 490, 493-94 (D.C. Cir. 2008).  When a district court undertakes an evaluation of an employer's motion for summary judgment in an employment discrimination case where the validity of the employer's proffered reasons for the challenged action is at issue, the district court "must resolve one central question: Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of race, color, religion, sex, or national origin?"  *Brady*, *id.* at 494.  In resolving this question, the Court considers the evidence that both sides have presented regarding the factual circumstances surrounding the challenged conduct.  *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507-508 (1993).

In this case, Defendant is entitled to summary judgment on Plaintiff's Title VII discrimination claim based on the termination of his employment.  Defendant has introduced evidence that the termination decision was based on legitimate business reasons, insofar as Plaintiff received two ineffective ratings for his work performance under the District's IMPACT Assessment System for the 2014-2015 school year.  The evidence shows that the District used this Assessment System to evaluate its employees.  *See* Powe Dep. at 174:12-20, Def's Mot. Ex. D; Custodial IMPACT Assessment Instructions 2014-2015 at 8, Def.'s Mot. Ex. E; *see also* Rasheed Dep. at 92:1-10, Def.'s Mot. Ex. A.  Furthermore, both Kim Spence, who served as principal of Simon, and Dr. Sharon Holmes, who served as Simon's acting principal, evaluated Mr. Rasheed's performance using DCPS's IMPACT Assessment System and rated him ineffective.  *See* DCPS

2014/2015 Impact Assessment Package for Rasheed Daoud, Def.'s Mot. Ex. F.  Plaintiff was rated on several factors, each on a scale of 4.0 highest to 1.0 lowest, under the categories "Custodian Standards" and "Commitment to the School Community," with the total scores under each category then multiplied by a factor (90 for Custodian Standards and 10 for School Commitment) to obtain a total weighted score ranging from 100-400 under the IMPACT Assessment System. *See*  Def.'s Mot. Ex. E, at 29.  The total score is tabulated and adjusted based on the employee's rating for "Core Professionalism."  *Id.*  When rated by Principal Spence, Plaintiff's total adjusted score was 179.7, and when rated by Acting Principal Holmes, Plaintiff's total adjusted score was 125.0.  *See* Def.'s Mot. Ex. F.[7]  On the overall Impact Scale, a rating of 100-200 points is classified as Ineffective, with a rating of 200-250 points classified as Minimally Effective.  *See* Def.'s Mot. Ex. E, at 30.   Under the IMPACT Assessment System, employees who are rated ineffective "will be subject to separation from the school system."  *See Id.* at 28.  As a result of his IMPACT Assessment scores, Mr. Rasheed's employment was terminated.  *See* Def.'s Mot. Ex. D, at 248:16-18 (where Mr. Powe testifies that "Mr. Rasheed was separated from DCPS as a consequence to being rated ineffective on his impact, on his final impact evaluation.")  Defendant asserts that "[t]he criteria used to rate and terminate Rasheed are specific and provide a basis for Rasheed to challenge the District's reasons given for his termination." Def.'s Mot., ECF No. 84, at 11.  Accordingly, the burden shifts to Plaintiff to show that the reason given for his termination – an ineffective performance rating  – is a pretext for religious discrimination.

In arguing pretext, Plaintiff alleges two theories, neither of which is linked to any discrimination based on religion: (1) that Mr. Rasheed's termination was predetermined; and (2) that it related to his accrual of leave.  Plaintiff alleges first that "multiple supervisory personnel

---

[7] The Court calculated the total scores based on the information provided by Defendant.

collaborated with Principal Holmes far in advance of Rasheed's IMPACT evaluation," which demonstrates that  "Rasheed's termination was predetermined prior to his IMPACT evaluation[.]"  Pl.'s Opp'n, ECF No. 85, at 7 (referencing Powe Dep. at 166-167, attached to Opposition as ECF No. 85-2).  The pages of the Powe Deposition referenced by Plaintiff indicate that Ms. Ellis sent an email (on April 9, 2015) to some DCPS employees indicating that Mr. Rasheed had a "proven track record of not reporting to work," and "his constant absences from work [were] creating a hardship on the building foreman in which he has to work double shifts," and "the cleanliness of the building [was] an issue as a result of his absences."  Pl.'s Opp'n Ex. 2 [Powe Dep.], at 166:15-22; 167:1-4.[8]   The Ellis email provides no indication of inappropriate collusion and makes no mention of Plaintiff's religion; rather, it indicates that there were concerns with Plaintiff's attendance and the effects on other custodial staff and the resultant cleanliness of the school.  *See* Ellis email, attached to Opposition at ECF No. 85-5 (asking for the next steps to replace or dismiss Mr. Rasheed).

Plaintiff points next to the fact that he had 278 hours of "use it or lose it annual leave" time, *see* pay records, attached to Opposition at ECF No. 85-3, and he notes that on April 15, 2015, Principal Holmes wrote to him about "the numerous times he rightfully exercised annual leave."  Pl.'s Opp'n, ECF No. 85, at 7; *see* Holmes Letter dated April 15, 2015, attached to Opposition at ECF No. 85-4.  In that letter, Principal Holmes explains that she is placing a leave restriction on Plaintiff because he had "taken leave, called in sick or [had] been tardy for a total of fifty five days" during the period September 12, 2014 - April 10, 2015, and as a result, the school was "not as clean as it should be," the "building was not clean and sanitary," and she noted further that his

---

[8] Ms. Ellis is identified by Defendant as the Instructional Superintendent of Cluster IV, a supervisor of principals.   Def.'s Reply, ECF No. 86, at 7.

absences "put a strain on the custodial team." *Id.* The letter makes no reference to Plaintiff's religion, and it notes only one instance of unauthorized leave on April 3, 2015, which is consistent with Principal Holmes' performance assessment of Mr. Rasheed. *See* Def.'s Mot. Ex. F (indicating that Plaintiff received a rating of "significantly below standard" on "attendance" and policies and procedures" due to an unexcused absence on April 3, 2015, and his failure to use the correct protocol for leave.) Plaintiff makes no connection between alleged complaints about him exercising annual leave and any religious discrimination.

Even considering Plaintiff's attempts to establish that Defendant's proffered reason for his termination was pretextual, the Court concludes that summary judgment in favor of Defendant on Plaintiff's Title VII claim based on his termination is appropriate. The Court notes that the Ellis email and the Holmes letter proffered by Plaintiff both indicate concerns about the cleanliness of the school and excessive absences by Plaintiff, and this is consistent with Principal Holmes giving Plaintiff a low score for performance of his job functions. *See* Def.'s Mot. Ex. F (where Defendant evaluates the manner in which Plaintiff performed the core functions of his job).

Plaintiff's evidence fails to establish a material dispute of fact as to Defendant's proffered reasons for Plaintiff's termination. First, the Holmes letter referenced by Plaintiff identifies dates in September, 2014 through April 2015, when Mr. Rasheed repeatedly either called out sick or took annual leave. *See* Holmes Letter, attached to Opposition at ECF No. 85-4. Second, Plaintiff's pay records show that he had more than 200 hours of annual leave at least as of April 2015, but it is unclear how much of that leave was "use it or lose it," and Plaintiff fails to address Defendant's assertion that the manner in which he took his leave disrupted custodial operations, except to assert that Principal Holmes should have arranged for additional staff coverage. Pl.'s Opp'n, ECF No. 85, at 7. Third, nothing in the Powe deposition relied upon by Plaintiff supports his contention

18

that the reasons for his termination were pretext.  Fourth, Plaintiff fails to establish any connection

whatsoever between his religion and any alleged discrimination.  He has not pointed to one shred

of evidence in the record indicating that his religion was considered by anyone or had any bearing

on his two performance evaluations, which ultimately led to his termination.

The Court concludes that Plaintiff has not produced evidence showing that Defendant's

stated reasons for Plaintiff's termination were pretext for discrimination.  In analyzing this

evidence, the Court makes no judgment as to whether or not Plaintiff was actually "ineffective" at

his job because that is not the relevant question. "Ultimately, the question before the Court is not

whether the negative [action] was justified or fair, but whether the employer honestly believed" its

proffered reasons for taking the action. *Mentzer v. Lanier*, 677 F. Supp. 2d 242, 258 (D.D.C. 2010),

*aff'd*, 408 F. App'x 379 (D.C. Cir. 2010).  And Plaintiff has presented no evidence supporting an

inference that Defendant did not consider its given reasons to be accurate.

Considering the parties' arguments as well as the record before the Court, the Court

concludes that summary judgment on Plaintiff's Title VII claim is appropriate. Plaintiff has failed

to "'produce[] sufficient evidence for a reasonable jury to find that the employer's asserted non-

discriminatory reason was not the actual reason and that the employer intentionally discriminated

against the employee' on the basis of" a protected trait or activity."  *Davis v. George Washington*

*Univ.*, 26 F. Supp. 3d 103, 118-19 (D.D.C. 2014) (quoting *Brady*, 520 F.3d at 494).  Accordingly,

the Court GRANTS Defendant's Motion for Summary Judgment on Plaintiff's Title VII

discrimination claim in Count I of his Second Amended Complaint.

### B.  Plaintiff's Claims Under the DCHRA

Turning now to Plaintiff's DCHRA claims, Defendant asserts that Mr. Rasheed's DCHRA

claim is limited to events that occurred after December 31, 2014 (one year prior to the EEOC

Charge date).  Def.'s Mot., ECF No. 84, at 11-12; Def.'s Reply, ECF No. 86, at 5-6.   Pursuant to

D.C. Code § 2-1403.16, DCHRA claims must be filed within one year of an allegedly unlawful

incident's occurrence or discovery.  Because there is a work-sharing agreement between the EEOC

and D.C.'s analogous agency, when a charge is timely filed with the EEOC, it tolls the limitations

for DCHRA claims in the charge.  *Craig v. District of Columbia,* 74 F. Supp. 3d 349, 366-67

(D.D.C. 2014).  Pursuant to the DCHRA, "[t]he timely filing of a complaint [with the D.C. Office

of Human Rights] or under the administrative procedures established by the Mayor pursuant to

D.C. Code § 2-1403.16(a), shall toll the running of the statute of limitations while the complaint

is pending."  D.C. Code § 2-1403.16(a); *see Miller v. Gray*, 52 F. Supp. 3d 62, 69 (D.D.C. 2014)

("[O]nce the EEOC charge was filed, the DCHRA's one year statute of limitations was tolled until

the plaintiff received a notice from the EEOC of his right to sue[.]") .

    In the instant case, as previously noted, in his Second Amended Complaint, Mr. Rasheed

alleged various adverse actions that occurred in 2011 and 2012, while he was employed at Ballou,

beginning with his September 2011 transfer to Ballou.  Plaintiff indicates further that he filed

EEOC Charges on November 13, 2012 (alleging discrimination starting in September 2011) and

on December 31, 2015 (generally alleging religious discrimination and specifically, the

termination of employment).[9]  Second Am. Comp., ECF No. 15, at ¶¶ 48, 4. Defendant asserts that

because the November 13, 2012 EEOC Charge "was filed *after* the one-year statute of limitations

had expired under the DCHRA for any alleged September 2011 claimed incidents, [therefore,]

the[se] [incidents] are not tolled but time-barred[,]" both for purposes of the November 2012

---

[9] In his December 31, 2015 EEOC Charge, Plaintiff two prior EEOC Charges being filed, the
first in November 2012, and the second in November 2014, but only the November 2012 Charge
is referenced in his Second Amended Complaint.  The Court has not seen a copy of any EEOC
Charge other than the one filed on December 31, 2015.

Charge and the December 31, 2015 EEOC Charge (which mentions the prior charge).  Def.'s Mot., ECF No. 84, at 12.  Plaintiff does not respond to this assertion about tolling and time bars.  Plaintiff relies on the fact that because his December 2015 EEOC Charge mentioned religious discrimination beginning on or about September 2012, this was enough to "sufficiently place the agency on notice of his . . . religious discrimination claims." Pl.'s Opp'n, ECF No. 85, at 10.  The case cited by Plaintiff to support this statement is factually inapposite.  *See Crawford v. Duke*, 867 F 3d 103, 109-110 (D.C. Cir. 2017) (finding that plaintiff had exhausted two of three claims of adverse employment actions where he attached supplemental documentation to his EEOC complaint that was directly relevant to those claims).

The claims before this Court are derived from the Plaintiff's December 31, 2015 EEOC Charge. The December 31, 2015 Charge states (by way of background) that "on or about September 2012," Plaintiff "started being subjected to discrimination based on [his] religion. .. through unfair rating evaluations," and he filed an EEOC Charge "[o]n or about November 2012," which "remained open until February 2015." EEOC Charge, ECF No. 84-9. This Court is unaware of the substance of that November 2012 EEOC Charge, and whether it refers to any specific allegations of religious discrimination from 2011-2012.   In his December 2015 Charge, Mr. Rasheed points to no discrete acts of discriminatory conduct (as asserted in his Second Amended Complaint) except to indicate that his employment was terminated. He does not mention any denial of leave to attend his ex-wife's funeral and grieve her death, or even any discrimination based on denial of leave in general.  In the context of the DCHRA, the D.C. Court of Appeals has held that "[i]t is only logical to limit the permissible scope of the civil action to the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Ivey v. District of Columbia*, 949 A.2d 607, 615 (D.C. 2008) (quoting *Sanchez v. Standard Brands, Inc.*,

431 F,2d 455, 466 (5th Cir. 1970)).  Applying the same "like or reasonably related" test articulated

by the D.C. Circuit Court in Title VII cases, the D.C. Court of Appeals determined that "[i]t is

sufficient that the EEOC be apprised, in general terms of the alleged discriminatory acts."  *Id.*

In this case, the incidents of alleged discriminatory conduct by Defendant while Plaintiff

was at Ballou from September 2011 through July 2014, which are alleged in Plaintiff's Second

Amended Complaint, were not mentioned in his December 31, 2015 EEOC Charge, although that

Charge notes (without providing specifics) that Plaintiff had filed a prior November 2012 EEOC

Charge.  With regard to any claims made in that November 13, 2012 EEOC charge, whether they

were tolled or not, Plaintiff was issued a right to sue letter on February 23, 2015, *see* Second Am.

Compl., ECF No. 15, at ¶ 48, and this was ten months before Plaintiff filed the EEOC Charge that

is at issue in this case.  Accordingly, the claims in that EEOC Charge from November 2012 are

not before this Court, and that leaves Plaintiff's 2015 claims on denial of leave and termination of

employment.[10]

Applying the "like or reasonably related" standard discussed above,  Plaintiff's DCHRA

claim would be limited to his allegation of discrimination relating to his August 2015 termination

of employment, as his alleged denial of leave from June 2015 was not mentioned in his December

31, 2015 EEOC Charge.  Defendant indicates however that it is willing to allow Mr. Rasheed to

"proceed against the District under the DCHRA for his claim that DCPS refused to give him three

days of leave to attend his ex-wife's funeral and to grieve her death in June 2015 and for his August

8, 2015 termination," because those two claims would not be time-barred.   Def.'s Mot., ECF No.

84, at 12.  Accordingly, the Court will analyze those two claims.

---

[10] There is no evidence in the record before this Court that Plaintiff pursued any legal action
based on that February 23, 2015 right to sue letter.

### 1. Termination of Employment

In its analysis of Plaintiff's Title VII claim for termination of employment, this Court has determined that Plaintiff failed to demonstrate that the reason for his termination was pre-textural. Given the similarities between the statutes, it is no surprise that the Court of Appeals in this Circuit has "made clear that federal case law addressing questions arising in Title VII cases is applicable to resolution of analogous issues raised regarding DCHRA claims." *Ali v. District of Columbia Government*, 697 F. Supp. 2d 88, 92 n. 6 (D.D.C. 2010) (citing *Howard Univ. v. Green*, 652 A.2d 41, 45 n.3 (D.C. 1994)); *see also, e.g., Regan v. Grill Concepts-D.C., Inc.*, 338 F. Supp. 2d 131, 134 (D.D.C. 2004) ("This Court, too, will consider [p]laintiff's claims under [the] DCHRA utilizing the case law developed for suits brought under Title VII.") Accordingly, Plaintiff's claim for employment discrimination based on his alleged unlawful termination fails under both Title VII and the DCHRA. In addition to failing to produce any evidence creating an inference of discrimination, Plaintiff has not introduced any evidence showing that Defendant's proffered reasons for its actions were pretextual. As the Court has already engaged in a full discussion of the issues, a repetition of that discussion is not necessary here. *See supra* Section III. A. 2.

With regard to Plaintiff's claim of religious discrimination based on denial of leave in June 2015, Defendant contends that Plaintiff has not made out a *prima facie* case of discrimination, which requires plaintiff to demonstrate that "(1)[he] is a member of a protected class; (2) [he] suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination." *Turner v. District of Columbia*, 383 F. Supp. 2d 157, 167 (D.D.C. 2005) (citation omitted). Religious discrimination claims apply the *McDonnell Douglas* framework to evaluate Title VII and DCHRA claims. *See Johnson v. Dong Moon Joo*, No. 01-0004, 2006 WL

627154, at *19 (D.D.C. Mar. 12, 2006) (applying the *McDonell Douglas* standard to a claim of religious discrimination under Title VII, Section 1981, and the DCHRA).

To establish a *prima facie* case of denial of leave, Mr. Rasheed must not only show that leave was denied, but he must also show that the denial was based on his religion. Plaintiff demonstrates neither.  Without evidentiary support, Mr. Rasheed claims that he was denied leave in June 2015 based on religious discrimination.   Plaintiff contends that "[i]n 2015, plaintiff was denied a leave of absence, which he had previously requested in order to attend the funeral service of his ex-wife, . . ." and "[o]n June 5, 2015, despite plaintiff ['s] FMLA request for three (3) days of grievance leave, Principal Holmes requested plaintiff to report to work."  Pl.'s Opp'n, ECF No. 85, at 6.   Plaintiff proffers no other argument or evidence relating to his denial of leave claim.

Mr. Rasheed's ex-wife's funeral was held on June 3, 2015, *see* Def.'s Mot. Ex. B (notice of memorial service), ECF No. 84-3, and it is undisputed that, on June 8, 2015, Plaintiff submitted a leave slip for sick leave taken from June 1, 2015 through June 5, 2015.  *See* Def.'s Mot. Ex. C [Handwritten leave slip signed by Mr. Rasheed], ECF No. 84-4.  Consequently, the evidence indicates that Mr. Rasheed took leave time, and no reasonable jury could conclude that Plaintiff was denied leave or that any such alleged denial was tied to religious discrimination.  Accordingly, Plaintiff's DCHRA claim relating to any alleged denial of leave fails, and summary judgment in favor of Defendant is appropriate.

Considering the parties' arguments as well as the record before the Court, the Court concludes that summary judgment on all claims in Plaintiff's Count I of his Second Amended Complaint is  appropriate.  Plaintiff has failed to "'produce[] sufficient evidence for a reasonable jury to find that [Defendant's] asserted non-discriminatory reason [for his termination] was not the actual reason and that [Defendant] intentionally discriminated against [Plaintiff]' on the basis of"

her religion in the context of any denial of leave in June 2015, or that Plaintiff was denied leave. *Davis v. George Washington Univ.*, 26 F. Supp. 3d 103, 118-19 (D.D.C. 2014) (quoting *Brady*, 520 F.3d at 494).  Accordingly, the Court GRANTS Defendant's Motion for Summary Judgment on Plaintiff's religious discrimination claim in Count I of his Second Amended Complaint.

## IV.  CONCLUSION

In sum, the Court GRANTS Defendant's motion for summary judgment on both Plaintiff's Title VII and DCHRA claims in Count I of his Second Amended Complaint.  As to Plaintiff's claim of religious discrimination under both Title VII and the DCHRA relating to his termination of employment, this Court finds that no reasonable jury could find that Defendant's asserted non-retaliatory reasons for its termination decision were pretextual and that Defendant intentionally discriminated against Plaintiff based on his religion.  As to Plaintiff's claim of religious discrimination under the DCHRA relating to his claimed denial of leave Plaintiff has failed to present any evidence that leave was denied or that any alleged denial of leave was based on discrimination because of his religion.  An appropriate Order accompanies this Memorandum Opinion.

DATED: November 30, 2020                    _____/s/_____
                                            COLLEEN KOLLAR-KOTELLY
                                            UNITED STATES DISTRICT JUDGE